IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMER WILLIAM-WHITFIELD, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-4513 |
| | : | |
| v. | : | |
| | : | |
| C.O. ABRAHAM; SGT. MILLER; ZACHARY SHAFFER; and ROBERT P. COLEMAN, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                February 3, 2022

The *pro se* plaintiff has filed an amended complaint in which he appears to assert claims under 42 U.S.C. § 1983 against two Court of Common Pleas Judges who have presided over his pending criminal cases and two other individuals who appear to work at the county correctional facility where the plaintiff is currently incarcerated. While unclear, it appears that the plaintiff is alleging that he is being wrongfully prosecuted and imprisoned on pending attempted murder charges and other offenses.

The court has screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and will dismiss the amended complaint. The court will dismiss with prejudice the plaintiff's claims against the two Common Pleas Judges as they are entitled to absolute immunity. The court will also dismiss without prejudice the plaintiff's claims against the remaining two defendants because he has failed to allege how they were personally involved in violating his constitutional rights. With respect to these claims that the court is dismissing without prejudice, the court will provide the plaintiff with leave to file a second amended complaint to the extent he can assert a plausible claim against these two defendants.

I.      ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Amer William-Whitfield ("William-Whitfield"), submitted an application for leave to proceed *in forma pauperis* and a complaint that the clerk of court docketed on October 13, 2021. *See* Doc. Nos. 1, 2. In the complaint, William-Whitfield, a pretrial detainee being held at Curran-Fromhold Correctional Facility ("CFCF") while awaiting trial on attempted murder and related charges, purported to assert constitutional claims under 42 U.S.C. § 1983. *See* Doc. No. 2.

Because William-Whitfield failed to file a certified copy of his prisoner account statement with his application for leave to proceed *in forma pauperis*, this court entered an order on October 28, 2021, which, *inter alia*, denied the application for leave to proceed *in forma pauperis* without prejudice to William-Whitfield to file a certified copy of his prisoner account statement within 30 days. *See* Oct. 28, 2021 Order at 1, Doc. No. 4. William-Whitfield timely filed a new application for leave to proceed *in forma pauperis* (the "IFP Application") and a prisoner trust fund account statement on November 15, 2021. *See* Doc. Nos. 5, 6.

This court screened the IFP Application and the complaint under 28 U.S.C. § 1915 and issued a memorandum opinion and order on January 5, 2022. *See* Doc. Nos. 9, 10. In these documents, the court granted the IFP Application and dismissed the complaint without prejudice to William-Whitfield filing an amended complaint. *See* Mem. Op. at 4, 8–9; Jan. 5, 2022 Order at 1–2. William-Whitfield timely filed an amended complaint on January 21, 2022. *See* Doc. No. 11.

In the amended complaint, William-Whitfield asserts that his case "arose on the outside," presumably referring to before he was incarcerated, when near the end of July 2020, two individuals were stabbed on Lynford Street in Philadelphia. *See* Am. Compl. at ECF p. 7. A black male was identified as the assailant. *See id.*

According to William-Whitfield, he was at a clothes cleaner at the time of the stabbing, and a police vehicle approached him as he left the shop. *See id.* He became nervous and walked back into the cleaner. *See id.* He then went around to the back of the store, where he was approached by another police officer. *See id.* He turned away from this officer and tried to return to the front of the cleaner, only to be approached by a group of officers who asked him where he had come from. *See id.* These officers told William-Whitfield about the two stabbing victims, and William-Whitfield denied any involvement in the crime. *See id.* at ECF p. 8. Apparently, he was eventually arrested, and now William-Whitfield claims that he has been wrongly imprisoned for the crime based on false evidence and "presentiment imprisonment." *Id.*

William-Whitfield names CFCF Sgt. Miller, CFCF C.O. Abraham, Judge Zachary Shaffer, and Judge Robert P. Coleman as defendants in the amended complaint. *See id.* at ECF pp. 1, 2–3. He sues all defendants in their official capacities. *See id.* at 2–3.

While these individuals are listed as defendants on the form complaint he used, William-Whitfield makes no specific allegations against any of them. He asserts claims under the First, Fifth, Sixth, Seventh, Eighth, Tenth, and Twelfth Amendments, *see id.* at 3, but he fails to explain how any of the named defendants violated any of the rights contained in these amendments. William-Whitfield also recites numerous sentence fragments that are difficult to understand since they contain no context. These include, *inter alia*, "false evidence presentment," "recreation and exercise – not answer," "H Classification grievances – not answer," "violation 2020 Republican District by law," "fail to transfer 90 day fugitive of justice violation," "The Prison Litigation – violation," "condition of confinement – violation," "unlawful restraint cruel and unusual punishment," and "wrongfully imprisonment false."[1] *Id.* at ECF p. 5.

---

[1] William-Whitfield has also filed numerous exhibits, both attached to his amended complaint, and separately filed, that fail to shed any light on his claims. These include copies of pages of legal texts, motions captioned for his state

On a different page of the form, William-Whitfield asserts that a non-defendant named Sgt. Fowler unlawfully restrained him, constituting cruel and unusual punishment and "mental abuse inhuman impersonal." *Id.* at ECF p. 9. He claims he suffered a black eye, mace burns on his mouth, a swollen knot on his head and emotional abuse for which he had to be hospitalized. *See id.* He seeks money damages and the dismissal of criminal charges that have been lodged against him. *See id.*

The court notes that a search of the publicly available records indicates that William-Whitfield is being detained on charges of attempted murder and related charges in *Commonwealth v. William-Whitfield*, Nos. CP-51-CR-636-2021, CP-51-CR-637-2021 (Philadelphia Cty. Ct. Com. Pl.), as well as charges of aggravated assault, simple assault, resisting arrest, disorderly conduct, and recklessly endangering another person in *Commonwealth v. William-Whitfield*, Nos. CP-51-CR-130-2021, CP-51-CR-131-2021, CP-51-CR-132-2021, CP-51-CR-133-2021, CP-51-CR-134-2021, and CP-51-CR-2141-2021 (Philadelphia Cty. Ct. Com. Pl.). All the offenses charged in those cases allegedly occurred in July 2020. The judge assigned to the cases is the defendant, Judge Shaffer, and the defendant, Judge Coleman, also presided over the cases. The cases remain pending.

## II.  DISCUSSION

**A.  <u>Standard of Review – Screening of Amended Complaint Under 28 U.S.C. § 1915</u>**

Because the court previously granted William-Whitfield leave to proceed *in forma pauperis*, the court must examine whether his amended complaint is frivolous, malicious, fails to

---

court criminal case, requests to prison staff, pages copied from this Court's Local Rules, a state court docket sheet, Pennsylvania sentencing materials, and a personal note to the undersigned stating in part "something is among the Jail PPS trying crime in case of mind and skin of dead metamorphosis uniform officer is trying. . . . My confinement [sic] is ellgal [sic]. . . . Help me please. . . . Something is attacking [sic] me." Am. Compl. at ECF p. 35; *see also* Doc. Nos. 12, 13, 14.

4

state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

5

*Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### B.  Analysis

William-Whitfield is seeking relief in the amended complaint under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

#### 1.  Claims Seeking Dismissal of Criminal Charges

As part of the relief he seeks in this case, William-Whitfield asks for the dismissal of criminal charges that have been lodged against him in state court. *See* Am. Compl. at ECF p. 9. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Because William-Whitfield cannot obtain this relief in a section 1983 action, the court dismisses this portion of the amended complaint with prejudice.

#### 2.  Claims Against Judges Shaffer and Coleman

William-Whitfield has alleged civil rights claims against two Judges of the Philadelphia Court of Common Pleas who have presided over his pending criminal cases. Judges are absolutely

immune from liability in civil actions, including section 1983 actions, for their judicial acts. *Dennis v. Sparks,* 449 U.S. 24, 27 (1980). "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are only two circumstances in which a plaintiff can overcome judicial immunity: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12 (citations omitted). With regard to the first exception, an act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). As for the second exception, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1112 (6th Cir. 1997)). In determining whether judicial immunity applies, the court "must decide whether the Complaint set forth allegations that, taken as true, establish that the application of an exception to the doctrine of absolute judicial immunity is above the speculative level." *Kirkland v. DiLeo*, 581 F. App'x 111, 114–15 (3d Cir. 2014) (citing *Twombly*, 550 U.S. at 555).

Since the actions allegedly taken by Judges Shaffer and Coleman were all normal functions done in their judicial capacity in a case over which they properly exercised jurisdiction as Judges of the Court of Common Pleas, they are absolutely immune from suit. The court therefore dismisses the claims against them with prejudice.

### 3.     Claims Against Sgt. Miller and C.O. Abraham

William-Whitfield has also named Sgt. Miller and C.O. Abraham as defendants, but he does not include any allegations that either of these defendants were personally involved in the

actions he describes about his arrest.[2] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

---

[2] In drafting his amended complaint, William-Whitfield checked the boxes on the form he used indicating that he seeks to name the defendants in their official capacities. He appears not to have understood the implication of checking the official capacity box. Claims against municipal employees such as Sgt. Miller and C.O. Abraham named in their official capacities are indistinguishable from claims against the governmental entity that employs them, here, the City of Philadelphia. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

Based on the above, to plausibly assert a claim against Sgt. Miller and C.O. Abraham in their official capacities, William-Whitfield must include sufficient allegations that would allow for liability against the municipality which employs the individual defendants, namely, Philadelphia County. *See Thomas v. City of Chester*, Civ. A. No. 15-3955, 2016 WL 1106900, at *2 (E.D. Pa. Mar. 21, 2016) ("A suit for damages against an individual municipal employee in his or her 'official capacity' is not cognizable unless the requirements of *Monell* are met." (citation omitted)); *see also McHugh v. Koons*, Civ. A. No. 14-7165, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Office[ ] pursuant to *Monell*."). To assert plausible claims against Philadelphia County, William-Whitfield must allege that it has a policy or custom which caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Thus, William-Whitfield "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

In addition,

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*,

Cir. 1988); *see Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Because William-Whitfield fails to describe how Sgt. Miller and C.O. Abraham personally acted to violate his civil rights, the claims against them are also subject to dismissal.

### 4. Leave to Amend

A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). In this case, while the court already provided William-Whitfield an opportunity to amend his pleading, and he has again failed to allege plausible claims, because the court cannot say he can never allege a civil rights violation against Sgt. Miller and C.O. Abraham, the court will dismiss the claims against them without prejudice and provide William-Whitfield one last opportunity to "flesh out his allegations by . . . explaining in [the] amended complaint the 'who, what, where, when and why' of [his] claim." *Gambrell v. S. Brunswick Bd. of Educ.*, Civ. A. No. 18-cv-16359 (PGS)(ZNQ), 2019 WL 5212964 (D.N.J. Oct. 16, 2019).

---

219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (alterations in original) (internal footnote omitted).

### III. CONCLUSION

For the foregoing reasons, the court will dismiss the amended complaint. The court dismisses with prejudice William-Whitfield's claims against Judges Shaffer and Coleman. The court also dismisses without prejudice the claims against Sgt. Miller and C.O. Abraham. The court will allow William-Whitfield the opportunity to file a second amended complaint to the extent he can assert a plausible claim against Sgt. Miller and C.O. Abraham.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.